**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RONNIE GULLY, JR., #B88170, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 26-cv-00107-SMY |
| | ) | |
| LATOYA HUGHES, LT. DALLAS, | ) | |
| LT. BRANDT, MAJOR DESMOND, | ) | |
| JACOB SCHULTZ, | ) | |
| PAIGE S. (Behavioral Health Tech.), | ) | |
| CHELSEA RAPENSBURG, | ) | |
| NICOLSON (Mental Health Professional), | ) | |
| JANE DOE 1 (Mental Health Director), and | ) | |
| ANTHONY WILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, Chief Judge:**

Plaintiff Ronnie Gully, Jr., an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims he was confined in unsanitary conditions and denied mental health treatment (Doc. 1). He seeks monetary damages and injunctive relief. *Id.*

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). Also pending is Plaintiff's motion for an emergency temporary restraining order ("TRO") and preliminary injunction (Doc. 2).

1

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1):  Between May 2025 and October 2025, Plaintiff was held in Cell 817 in Menard's North Two Segregation.  The cell was contaminated with black mold, peeling paint, and rusted metal (Doc. 1, p. 4).  Inmates regularly threw feces and flooded the gallery with toilet water.  In August 2025, Plaintiff broke out in rashes and hives that went untreated for a long period (Doc. 1, p. 6).  Other inmates' yelling and banging aggravated his mental health conditions, as did the lack of access to religious services.  Plaintiff was not given enough showers or razors from January to November 2025 (Doc. 1, pp. 6-7).  Defendant Brandt denied Plaintiff's request to go to the barber while he was in restrictive housing, and he was unable to obtain hair care products or trimmers (Doc. 1, p. 7).  Yard time was frequently cancelled.  The prison smelled like spoiled milk and sewage, and summer temperatures reached 120 degrees in the cells.  Plaintiff complained about the segregation conditions in many letters to Defendant Hughes, which she forwarded to Defendant Dallas (Internal Affairs), but nothing was done (Doc. 1, p. 7).

Defendant Wills failed to provide a clean, healthy living environment at Menard, despite having federal funding to provide heat in winter, hot running water, address the infestation of roaches, mice, and spiders, provide properly cooked and nutritious food, and provide adequate medical care (Doc. 1, pp. 4, 7-8).  The insufficient protein in prison meals caused Plaintiff's weight to fall from 300 to 239 pounds (Doc. 1, p. 4).

For ten months,[1] mental health provider Defendants Ms. Paige S. and Rapensburg denied Plaintiff group and individual therapy for his PTSD, ASPD, bipolar disorder, depression, and anxiety.  Plaintiff informed Defendant Nicolson, a mental health professional, of his needs via

---

[1] Plaintiff does not give the dates of this ten-month period when he could not access mental health services, but at least some of this time was during his confinement in segregation (Doc. 1, p. 5).

2

crisis calls and several intakes.  Nicolson made a treatment plan without evaluating or interviewing Plaintiff (Doc. 1, p. 5).  Defendant Desmond was part of the treatment team and failed to "run group" and provide security, thus Plaintiff was unable to be involved in a mental health program/group.  *Id.*

While Plaintiff was in the East Cell House, he was denied ADA-equipped showers (Doc. 1, pp. 5-6).  Menard does not offer any college, trade education, or rehabilitation programs (Doc. 1, p. 6).  Plaintiff seeks monetary damages and a transfer out of Menard (Doc. 1, p. 11; Doc. 2).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> **Count 1:**  Eighth Amendment cruel and unusual punishment claim against Wills, Hughes, Dallas, Schultz, and Brandt, for confining Plaintiff in unsanitary and unhealthy conditions in Menard's North Two Segregation Cell 817 from May 2025 through October 2025.
>
> **Count 2:**  Eighth Amendment deliberate indifference to serious mental health needs claim against Paige S., Rapensburg, Nicolson and Desmond for denying Plaintiff mental health services for ten months.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Preliminary Dismissals

Plaintiff includes the Jane Doe 1 Menard Mental Health Director (misidentified as "John" Doe 1 on the docket sheet. Doc. 1, pp. 1, 3) as a defendant but fails to mention this individual in his statement of claim and does not describe what she allegedly did to violate his constitutional rights.  Merely invoking the name of a potential defendant is not sufficient to state a claim against

that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Instead, a plaintiff is required to associate specific defendants with specific facts and claims so defendants are put on notice of the claims brought against them and can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Because Plaintiff has not stated a viable claim against Jane Doe 1, she will be dismissed from the case without prejudice.

## Discussion

### Count 1

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the conditions. *Farmer*, 511 U.S. at 837, 842. For a defendant to be personally liable under § 1983, the individual "must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005).

Plaintiff describes an objectively serious deprivation in the Complaint; an approximate six-month period in a cell contaminated with black mold, vermin, and human waste, with no hot water. He allegedly developed skin and respiratory conditions and his mental health suffered. He claims the cell was not adequately heated or cooled and that he did not receive adequate nutrition. The combination of these conditions may amount to an excessive risk to Plaintiff's physical and mental health. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013).

4

Plaintiff alleges Wills is responsible for the unconstitutional cell conditions because he is in charge of managing the prison.  However, Wills cannot be held liable in a § 1983 civil rights case based on his supervisory position as warden.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Plaintiff alleges Hughes, Wills, and Lt. Dallas "spoke to [him] formally and informally" about his many claims of cruel and unusual punishment (Doc. 1, p. 8).  If Plaintiff's conversations with these defendants informed them of the conditions in Cell 817 during May 2025 through October 2025 and they took no steps to mitigate the risks to Plaintiff's health, they may be found liable under Eighth Amendment standards.

Defendants Brandt and Schultz, however, will be dismissed from this claim.  Plaintiff alleges only that Brandt refused him permission to visit the barber, which does not amount to a constitutional violation.  Plaintiff does not include any factual allegations regarding Schultz.  His only mention of Schultz is that he subjected Plaintiff to "a vast array of cruel, evil, and malicious conditions."  (Doc. 1, p. 4).

Count 1 will proceed only against Hughes, Wills, and Dallas.

## Count 2

Prison officials and medical/mental health staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs.  *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).  To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical/mental health needs.  *Id.*

Plaintiff alleges he personally informed defendant mental health providers Ms. Paige S.,

5

Chelsea Rapensburg, and Ms. Nicolson that he needed mental health treatment for PTSD, ASPD, bipolar disorder, depression, and extreme anxiety conditions and that they failed to provide him with any individual or group mental health therapy sessions for a ten-month period. These allegations are sufficient to state a claim in Count 2 for deliberate indifference against these three mental health providers. Plaintiff also adequately states a claim against Major Desmond, who allegedly interfered with his access to mental health groups/programs.

Count 2 will proceed against Desmond, Paige S., Rapensburg, and Nicolson.

**Injunctive Relief**

Because the Complaint includes a request for injunctive relief, the current Warden of Menard Correctional Center, in his/her official capacity, will be added to the docket regarding the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

Plaintiff requests a TRO and Preliminary Injunction, ordering defendants to transfer him away from Menard to escape the unconstitutional conditions (Doc. 2). He asserts he is currently housed in the North Two Restricted Housing unit in Cell 154 (Doc. 2, p. 2). While this is a different cell from the cell involved in Count 1, it is in the same housing unit and Plaintiff describes similar conditions. Plaintiff claims: the cell is freezing in the winter, too hot in summer, and not adequately ventilated; there is no hot water for bathing; Plaintiff has respiratory and sinus congestion; he does not have enough clothing or blankets to stay warm and the heaters are turned off; the cell is infested with roaches, mice, and spiders (Doc. 2, p. 3); and his sick call requests are not answered (Doc. 2, p. 5).

A TRO is an order issued without notice to the party to be enjoined that may last no more

than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). Because Plaintiff has not demonstrated the likelihood of immediate and irreparable harm before Defendants can be heard, his request for a TRO is **DENIED**.

A preliminary injunction may issue only after the adverse party is given notice and an opportunity to respond. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he has some likelihood of succeeding on the merits, that no adequate remedy at law exists, and that he will suffer irreparable harm if injunctive relief is not granted. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If these elements are established, the Court must then balance the potential harm to the movant if the preliminary injunction were denied against the potential harm to the non-movant if the injunction were granted, and must consider whether granting the preliminary injunction is in the public interest. *Mays*, 974 F.3d at 810; *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Defendants must be given an opportunity to file a response before the Court can resolve Plaintiff's motion. Accordingly, the Menard Warden, in his official capacity, may respond to the motion for injunctive relief (Doc. 2) **within 14 days** of returning an executed waiver of service of process.

### Disposition

The Complaint states colorable claims in Count 1 against Latoya Hughes, Lt. Dallas, and

Anthony Wills; and in Count 2 against Paige S., Chelsea Rapensburg, Nicolson, and Major Desmond. Lt. Brandt, Jacob Schultz, and John/Jane Doe 1 (Menard Mental Health Director) are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard Correctional Center, in his or her official capacity, to the docket for purposes of Plaintiff's claim for injunctive relief.

The Clerk shall prepare for Latoya Hughes, Lt. Dallas, Major Desmond, Paige S., Chelsea Rapensburg, Nicolson, Anthony Wills, and the Warden of Menard Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Motion at Doc. 2, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues**

**stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 9, 2026**

**Staci M. Yandle**
**Chief U.S. District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days**

or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.